UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| MICHAEL FIORITO, | Case No. 22-CV-2128 (PJS/TNL) |
| Plaintiff, | |
| v. | ORDER |
| JENEFER SOUTHWICK and OFFICER JACOBSON, | |
| Defendants. | |

Plaintiff Michael Fiorito is an extraordinarily litigious federal prisoner who was incarcerated for about a year at the Federal Correctional Institution in Sandstone, Minnesota ("FCI-Sandstone") before being transferred to another prison. To date, Fiorito has filed at least eleven lawsuits related to the conditions at FCI-Sandstone during his year of confinement, and he has vowed to file additional lawsuits.[1] *See, e.g., Fiorito v. Drummy*, No. 22-CV-0923 (PJS/TNL); *Fiorito v. Lilo*, No. 22-CV-0924 (PJS/TNL); *Fiorito v. Lilo*, No. 22-CV-0925 (PJS/TNL); *Fiorito v. Kensy*, No. 22-CV-0927 (PJS/TNL); *Fiorito v. United States*, No. 22-CV-2597 (PJS/TNL); *Fiorito v. United States*, No. 22-CV-2879 (PJS/LIB); *Fiorito v. United States*, No. 22-CV-3055 (ECT/DTS); *Fiorito v. United*

---

[1] Several of the eleven lawsuits were filed after Fiorito's transfer to another prison, but each of the eleven lawsuits relates to events alleged to have occurred at FCI-Sandstone. In addition, Fiorito has filed six habeas actions in this District.

*States*, No. 23-CV-0596 (PJS/ECW); *Fiorito v. Kensy*, No. 23-CV-0598 (KMM/TNL); *Fiorito v. United States*, No. 23-CV-0601 (WMW/TNL).

In this action, Fiorito alleges that an officer employed by the Bureau of Prisons ("BOP") sexually assaulted him and that another BOP officer turned a blind eye to the alleged sexual assault. Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Fiorito's claims are "brought with respect to prison conditions under . . . Federal law," and therefore the administrative-exhaustion requirement of § 1997e(a) applies to his claims. "Dismissal without prejudice is mandatory" under § 1997e(a) when a prisoner has failed to exhaust available remedies. *Porter v. Sturm*, 781 F.3d 448, 452 (8th Cir. 2015).

It was obvious at the outset of this action that Fiorito had not exhausted his administrative remedies before filing suit. Evidence submitted in another of his lawsuits showed that although Fiorito frequently files grievances while in prison, he rarely bothers to complete the administrative-review process. *See* Bush Decl. ¶¶ 11-32, *Fiorito v. Drummy*, No. 22-CV-0923 (PJS/TNL), ECF No. 34 (D. Minn. Aug. 31, 2022). That evidence also showed that Fiorito had exhausted his administrative appeals with respect to only a single claim arising at FCI-Sandstone—a claim related to the alleged

withholding of medication, which is not at issue in this lawsuit. *See id.* Ex. F, ECF No. 34-6.

Because Fiorito's failure to exhaust administrative remedies would likely prove dispositive, the Court stayed this litigation and afforded defendants an opportunity to either invoke or declare that they would not be invoking an exhaustion defense under § 1997e(a). *See* ECF No. 12. As expected, defendants thereafter moved for summary judgment on the grounds that Fiorito had not exhausted administrative remedies for his claims. *See* ECF No. 19. The evidence submitted in support of the motion for summary judgment establishes what the Court had already suspected from the evidence submitted in Fiorito's other lawsuits: At the time that Fiorito filed this lawsuit, he had not fully exhausted administrative remedies for his claims. *See generally* Decl. of Shannon Boldt ("Boldt Decl.") [ECF No. 21].

Fiorito does not dispute that he failed to complete the administrative-review process prior to commencing this action, but he argues that this lawsuit nevertheless should not be dismissed. Fiorito takes a shotgun approach in resisting dismissal—scattering his arguments across nearly two dozen documents—but his arguments can be grouped into roughly three categories:

First, Fiorito argues that although he did not go through the administrative-review process *before* he filed this lawsuit, he has exhausted—or at least has begun to exhaust—the BOP's administrative-remedy process *after* filing suit. *See* ECF No. 37 at 9-

11. But "[u]nder the plain language of section 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court." *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003). "Thus . . . the district court must look to the time of filing, not the time the district court is rendering its decision, to determine if exhaustion has occurred. If exhaustion was not completed at the time of filing, dismissal is mandatory." *Id*. Any steps taken by Fiorito towards exhausting his administrative remedies after filing this lawsuit are thus irrelevant to whether this lawsuit should be dismissed pursuant to § 1997e(a).

Second, Fiorito argues that administrative remedies were not made available to him by the BOP because officials at FCI-Sandstone threatened him with retaliation should he go forward with his grievances. "A prisoner need not exhaust remedies if they are not 'available.'" *Ross v. Blake*, 578 U.S. 632, 636 (2016) (quoting § 1997e(a)). Administrative remedies are not regarded as being available "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 644.

The evidence submitted by Fiorito in support of his claim that he was too intimidated to file a grievance against the defendants is flimsy. Most of Fiorito's evidence consists of his own letters in which he says that he is too intimidated to report misconduct to prison officials—usually in the course of reporting misconduct to prison officials. *See* ECF No. 44. This is a common Fiorito practice. Fiorito has alleged at one

4

time or another that officials at practically every one of the many facilities in which he has been incarcerated have threatened him for filing grievances. *See, e.g., Fiorito v. Samuels*, No. 16-1064-JES, 2016 WL 3636968, at *1 (C.D. Ill. June 30, 2016); *Fiorito v. Sylvester*, No. 5:17-CV-1253 (JFW/KES), ECF No. 1 ¶ 2 (C.D. Cal. June 22, 2017) (alleging that "[s]taff are retaliating against [Fiorito] for his filing of valid grievances against them"). At the same time, Fiorito has filed *hundreds* of grievances during his incarceration. *See* Boldt Decl. ¶ 11. The one thing that can be said with certainty about these supposed threats from prison officials is that they have been singularly ineffective in discouraging Fiorito from availing himself of the administrative-review process.

In any event, regardless of whether threats of retaliation rendered any administrative remedies unavailable at FCI-Sandstone, Fiorito was transferred to another facility more than two months prior to filing this action. *See Fiorito v. Fikes*, No. 22-CV-1368 (JRT/TNL), ECF No. 3 (D. Minn. June 9, 2022). Fiorito himself appears to concede that, whether or not administrative remedies were "available" to him at FCI-Sandstone, they have been available to him since he was transferred. Indeed, Fiorito has used the administrative process to grieve the very claims at issue in this lawsuit. *See* ECF No. 37 at 9-11. By his own reckoning, then, Fiorito jumped the gun by filing this lawsuit before seeing the administrative-remedy process through to a conclusion.

Finally, Fiorito has raised a host of other issues, seemingly in an effort to delay the inevitable for as long as possible. Fiorito complains that the Court improperly

5

invoked an exhaustion defense on defendants' behalf, even though the Court expressly stated that it was *not* invoking an exhaustion defense on defendants' behalf. *See* ECF No. 12 at 3 ("The Court . . . cannot invoke § 1997e(a) on defendants' behalf . . . .").[2] The Court merely asked defendants to notify the Court whether *they* intended invoke lack of exhaustion as a basis for dismissal, an entirely permissible instance of case management. Fiorito complains that defendants have not established that they have authorized the United States Attorney's Office to represent them in this litigation, even though defendants are under no obligation to do so. *See Odeh v. Mitchell*, No. CIV A 4:07-CV-0411-L, 2008 WL 4387082, at *7 (N.D. Tex. Sept. 25, 2008). Fiorito argues that issues of material fact exist regarding whether defendants violated his constitutional rights, even though that is entirely irrelevant to the exhaustion question, which must be adjudicated before the Court may reach the merits. *See Benjamin v. Ward Cnty.*, 632 F. App'x 301, 301-02 (8th Cir. 2016) (per curiam) (collecting cases). And Fiorito complains that he has not had an adequate opportunity to conduct discovery on the question of exhaustion, even though Fiorito hardly needs "discovery" to determine what he himself has done, and even though Fiorito has acknowledged both that administrative remedies are available to him and that he did not exhaust those remedies before he filed this lawsuit.

---

[2] The Court therefore rejects Fiorito's argument that the undersigned must recuse due to a violation of the party-presentation rule. *See, e.g.*, ECF No. 25 at 2.

Because no genuine issue of material fact exists on the question of exhaustion, defendants' motion for summary judgment on that issue is granted, and this matter is dismissed without prejudice. In addition, all of Fiorito's many pending motions are denied. Those motions were filed in violation of the Court's earlier orders imposing a stay in this matter and, in any event, are meritless.

One final issue: Several months ago, this Court said the following about this lawsuit:

> The Court suspects that this action is both frivolous and malicious. With respect to frivolity: If the evidence regarding Fiorito's administrative-grievance history presented by the government in Fiorito's earlier lawsuits is accurate, then there is no obvious good-faith argument available to Fiorito regarding why claims raised in this matter, even if adequately pleaded, would not inevitably be dismissed for failure to exhaust administrative remedies. Administrative remedies were almost certainly "available" to Fiorito, 42 U.S.C. § 1997e(a)—indeed, he has availed himself of the BOP's administrative-review procedures on countless occasions, including numerous times while he was incarcerated at FCI-Sandstone—and Fiorito appears simply to have not bothered to go through the appropriate steps before bringing this lawsuit.

ECF No. 12 at 4. This action turned out to be just as frivolous as the Court suspected.

Most prisoners are discouraged from filing frivolous and malicious actions by the Prison Litigation Reform Act, which requires prisoners to pay in installments the filing fee for civil actions initiated in federal court, *see* 28 U.S.C. § 1915(b), and prohibits prisoners from proceeding *in forma pauperis* if they have "on 3 or more prior occasions,

7

while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(g). But Fiorito has discovered that by filing his lawsuits in state court (knowing full well that they will be removed to federal court), he can evade these restrictions. Fiorito has not paid a dime for any of the eleven lawsuits that he has filed in this District, and none of those lawsuits will result in "strikes" even if they are found to be frivolous or malicious.

The other tools usually at the Court's disposal when dealing with frivolous or malicious litigants are also unavailable or unhelpful when it comes to Fiorito. Fiorito has little money and is unlikely to pay any monetary sanction. Moreover, any monetary sanction that Fiorito *did* pay would come at the expense of the victims of his crimes, who are still owed most of the $338,529.89 that Fiorito stole from them and has been ordered to repay. *See United States v. Fiorito*, No. 07-CR-0212 (PJS/JSM) (D. Minn.). In any event, Fiorito has only paid a fraction of the filing fees that he incurred in federal court before he discovered the state-court trick, despite his obligation to continue paying those fees as funds become available to him—and despite the obligation of the BOP to deduct the necessary funds from Fiorito's prison trust account and remit them to the judiciary. *See* 28 U.S.C. § 1915(b); *Fiorito v. Samuels*, No. 1:16-CV-1064-JES (C.D. Ill Aug. 27, 2018) (reflecting that Fiorito has paid only $68.07 of the $505.00 owed on appeal for that lawsuit). Apart from monetary sanctions, a court may restrict litigants

8

from initiating new lawsuits in federal court absent prior judicial approval, *see In re Tyler*, 839 F.2d 1290, 1992-95 (8th Cir. 1988) (per curiam), but, again, Fiorito files his non-habeas lawsuits in state court rather than federal court.  As Fiorito correctly points out, this Court cannot stop him from filing lawsuits in state court.

That said, "[t]he Court has authority to control and manage matters pending before it," and "[d]efendants have a right to be free from harassing, abusive, and meritless litigation."  *Id.* at 1292-93 (citation and quotation marks omitted).  Fiorito's history as an abusive and vexatious litigant precedes him.  *See Fiorito v. Thompson*, No. 1:20-CV-1682 (JPB), ECF No. 25 at 3 (N.D. Ga. June 4, 2020) (finding that Fiorito had "abused the judicial process" by being untruthful about his past litigation history); *Samuels*, 2018 WL 11307319, at *5-7 (noting Fiorito's "clear record of contumacious conduct").  Fiorito has filed literally dozens of unsuccessful lawsuits, and there is no reason to believe that Fiorito will ever stop being vexatious.  Indeed, in a letter that he sent to opposing counsel in one of the other eleven cases that he has filed (so far) in this District, Fiorito made clear his intentions:

> I will be out this coming summer and I promise you I will ramp-up my litigation efforts against you, Schiltz and your scumbag clients.  Minnesota has a lengthy SoL on personal injury.
>
> I look forward to investigating your entire background in order to better understand my opposition in the current and upcoming litigation.  All I have now is a pen and pad of paper and you can't stop bitching and crying to Schiltz about my filings, this makes me laugh, wait until I have a computer, some software, and a couple reams of paper.

*Fiorito v. United States*, Case No. 22-CV-2597 (PJS/TNL), ECF No. 29-2 at 2 (D. Minn. Mar. 15, 2023).  Fiorito attempts to use his abusive lawsuits as a type of currency; for example, he has offered to voluntarily dismiss six cases and refrain from filing three others in exchange for opposing counsel agreeing to expunge two incident reports.  ECF No. 18.  The government has understandably not taken him up on his offer.

This has gone on long enough.  The Court must now put in place safeguards to protect both itself and future defendants from Fiorito's conduct.  Those safeguards will take two forms:

First, Fiorito has adopted as a litigation strategy the practice of overwhelming the Court and defendants with motions, arguments, and whatever else pops into his head.  Defendants, understandably, feel compelled to respond to each of these arguments, by which time Fiorito has moved on to *other* arguments, and on and on.  Thus, for example, Fiorito has filed *twelve* motions[3] in this lawsuit—an average of nearly one motion per week—since defendants filed their motion for summary judgment in January.  Fiorito did so even though this Court prohibited him from filing motions (other than reasonable requests for extensions of time) until the exhaustion issue was resolved.  Fiorito simply defied the Court's order.

Fiorito's whack-a-mole litigation strategy will no longer be tolerated.  Any action commenced by Fiorito in this District—or commenced by Fiorito in state court and

---

[3] *See* ECF Nos. 25, 28, 29, 30, 33, 35, 36, 37, 43, 45, 46, & 47.

thereafter removed to this District—will be automatically stayed pending review under 28 U.S.C. § 1915A. During the pendency of that stay, any document submitted by Fiorito other than the pleading itself and any documents accompanying the pleading will be returned to Fiorito by the Clerk of Court without filing. The stay imposed pursuant to this order will be lifted automatically (1) upon dismissal of the action; (2) upon issuance of a Report and Recommendation pursuant to Rule 72(b)(1) of the Federal Rules of Civil Procedure; or (3) upon an order of the Court directing defendants to file an answer or otherwise respond to Fiorito's pleading. The stay may, of course, be lifted at any other time by the judge or magistrate judge assigned to the particular case.

Second, Fiorito files lawsuits compulsively, and one consequence of that compulsiveness is that Fiorito often fails to exhaust administrative remedies even where those remedies are available to him. An expedited process is now warranted for determining whether Fiorito has plainly failed to exhaust available administrative remedies for his claims. Accordingly, upon commencing a new action to which § 1997e(a) applies,[4] Fiorito must establish a prima facie case either that he has exhausted administrative remedies for his claims or that administrative remedies were unavailable for his claims. Fiorito must establish this prima facie case by pleading specific facts in his complaint or by attaching evidence to his complaint. Failure to establish the

---

[4] To be clear: This restriction will be applied to lawsuits brought by Fiorito in state court that are later removed to federal court.

11

required prima facie case will be grounds for summary administrative termination of the proceeding by the district judge assigned to that proceeding.

The Court knows that exhaustion of administrative remedies is an affirmative defense and that § 1997e(a) does not require plaintiffs to plead that they have exhausted administrative remedies. *See Jones v. Bock*, 549 U.S. 199, 211-15 (2007). But any action filed by Fiorito that is terminated for failure to comply with this order will not be dismissed pursuant to § 1997e(a), but rather pursuant to the Court's inherent authority to manage its own docket, *see Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) (recognizing that "district courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases"), and to foreclose vexatious conduct, *see Tyler*, 839 F.2d at 1292-93. Moreover, the restrictions imposed in this order will not inhibit Fiorito's right of access to the courts in any way. Fiorito is not restricted from filing any lawsuit in state or federal court, and he may appeal from any administrative termination—though, of course, any appeal that is deemed frivolous or malicious will result in a strike being assessed against him. *See* 28 U.S.C. § 1915(g). What Fiorito *will* be restricted from doing, however, is prosecuting litigation with no hope of success or needlessly multiplying issues before the Court merely to inflict costs on his opponents and wreak vengeance on the court system.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1. The motion for summary judgment of defendants Jenefer Southwick and Officer Jacobson [ECF No. 19] is GRANTED.

2. This matter is DISMISSED WITHOUT PREJUDICE pursuant to 42 U.S.C. § 1997e(a).

3. Plaintiff Michael Fiorito's motion for summary judgment [ECF No. 46] is DENIED.

4. Fiorito's motion [ECF No. 25] objecting to the Court's November 10, 2022 Scheduling Order is DENIED.

5. Fiorito's motion to take judicial notice [ECF No. 37] is DENIED.

6. Fiorito's request for a continuance to conduct further discovery [ECF No. 43] is DENIED.

7. Fiorito's motion for an extension of time to respond and to take judicial notice [ECF No. 45] is DENIED.

8. Fiorito's motion in opposition to summary judgment [ECF No. 47] is DENIED.

9. All future litigation commenced by Fiorito in this District, or commenced by Fiorito in state court and thereafter removed to this District, is subject to the following restrictions:

   a. The litigation will be stayed automatically upon filing or upon removal for review pursuant to 28 U.S.C. § 1915A. All deadlines established by the Federal Rules of Civil Procedure will be tolled for the duration of that stay. The Clerk of Court is directed to return *without filing* any documents filed by Fiorito during the pendency of the stay.

   b. At the time that he commences a lawsuit to which 42 U.S.C. § 1997e(a) applies, Fiorito must establish a prima facie case either that he has exhausted administrative remedies for his claims or that administrative remedies were unavailable for those claims. Fiorito may establish a prima facie case either by pleading specific facts in his complaint or by attaching documentary evidence to that complaint. Failure to establish the required prima facie case upon filing or removal is grounds for administrative termination of the proceeding by the district judge assigned to that proceeding.

   c. The stay that will apply to any litigation commenced by Fiorito will automatically terminate upon dismissal of the action; upon

issuance of a Report and Recommendation pursuant to Rule 72(b)(1) of the Federal Rules of Civil Procedure; or upon an order of the Court directing defendants to file an answer or otherwise respond to Fiorito's pleading.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: April 12, 2023                          s/Patrick J. Schiltz_____
                                                               Patrick J. Schiltz, Chief Judge
                                                               United States District Court